Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7308 | **DATE** | 11/26/2001 |
| **CASE TITLE** | USA vs. Tarkowski | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court concludes that the government's position was unjustified in any of the three relevant respects: its factual contentions lacked a reasonable basis in truth; its legal theory lacked a reasonable basis in law; and there was no reasonable connection between the facts it alleged and theory it propounded.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 3 0 2001 date docketed | |
| | Notified counsel by telephone. | | | 64 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | 01 NOV 29 PM 3: 35 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JOHN TARKOWSKI, ) <br> ) <br> Defendant. ) | Case No. 99 C 7308 <br><br> DOCKETED <br> NOV 3 0 2001 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In November 1999, the government filed suit seeking access to the property of John Tarkowski pursuant to section 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §9604(e), for the purpose of "remediation," that is, to investigate possible environmental hazards and remove quantities of Tarkowski's personal property and other materials. Tarkowski could not afford to hire counsel and initially proceeded *pro se*. The Court set the matter for an evidentiary hearing, but after it became clear that Tarkowski was not capable of representing himself, we appointed counsel to defend him. Tarkowski prevailed both in this Court and on appeal. *See United States v. Tarkowski*, 248 F.3d 596 (7th Cir. 2001), affirming this Court's oral ruling in Tarkowski's favor.

After the Court of Appeals' decision became final, Tarkowski's counsel petitioned this Court for an award of attorney's fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412. (The fact that counsel was appointed and handled the matter *pro bono* does not affect their ability to recover under the EAJA, a point not contested by the government. *See, e.g.,*

*Ed A. Wilson, Inc. v. General Services Administration,* 126 F.3d 1406, 1409 (Fed. Cir. 1997); *SEC v. Conserv Corp.,* 908 F.2d 1407, 1415 (8th Cir. 1990).) The government requests that the Court deny the petition.

The EAJA entitles a person who prevails against the United States in a civil lawsuit to an award of attorney's fees and expenses, unless the court finds that the government's position was substantially justified or special circumstances make an award unjust. 28 U.S.C. §2412(d)(1)(A). The statute's purpose "is to eliminate for the average person the financial disincentive to challenge unreasonable government actions." *Commissioner v. Jean,* 496 U.S. 154, 163 (1990). The EAJA also has a deterrent purpose: it encourages the government to "investigate, prepare, and pursue litigation against private parties in a professional and appropriate manner." *United States v. Hallmark Construction Co.,* 200 F.3d 1076, 1080 (7th Cir. 2000).

We begin by reviewing briefly the basis for the government's action against Tarkowski. Section 104(e) of CERCLA authorizes the government to enter property to effectuate a response action "if there is a reasonable basis to believe that there may be a release or threat of release of a hazardous substance or pollutant or contaminant." 42 U.S.C. §9604(e)(1). If consent to entry is denied (as occurred here), the government may obtain a judicial order preventing interference with the entry "unless under the circumstances of the case the demand for entry or inspection is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* §9604(e)(5)(B)(i). When the government brought suit against Tarkowski, it claimed that "the environmental contamination at the Site [Tarkowski's residential property] presents an imminent and substantial endangerment to the public health, welfare, and the environment arising from the actual release or threat of release of hazardous substances from the Site." *See Tarkowski,* 248

2

F.3d at 598. It sought authority to conduct the "response action" proposed in a May 27, 1999 "Action Memo," which included the removal of drums, batteries, pressurized cylinders, "10 nonhazardous rolloff boxes of debris," and "25 cubic yards of asbestos," which likely consisted of the soil surrounding a location where a small amount of asbestos had been seen. The government conceded that the Court had the authority to review its actions to determine whether they were arbitrary and capricious, an abuse of discretion, or contrary to law, but it contended that no court had any authority to review the reasonableness of the response action that it planned to conduct.

The government argues that its position was substantially justified. The fact that it lost the case does not mean that its position was unjustified. "The government's position can be justified even though it is not correct and it can be substantially justified 'if a reasonable person could think it correct, that is, if it has a reasonable basis in fact.'" *Young v. Sullivan*, 972 F.2d 830, 835 (7th Cir. 1992) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Similarly, conduct found to be arbitrary and capricious is not *per se* unreasonable for purposes of the EAJA. *See Andrew v. Bowen*, 837 F.2d 875, 878 (9th Cir. 1987); *Sierra Club v. Secretary of the Army*, 820 F.2d 513, 517 (1st Cir. 1987). Rather, we must conduct a "fresh and distinctive inquiry" to determine whether fees are appropriate. *Sierra Club*, 820 F.2d at 518. In determining this issue we must look at the case – both its pre-litigation and litigation stages – "as an inclusive whole, rather than as atomized line-items." *Jean*, 496 U.S. at 161-62.

We examine whether the government's position was grounded in a reasonable basis in truth for the facts alleged; a reasonable basis in law for the theory propounded, and a reasonable connection between the facts alleged and the theory propounded. *Hallmark*, 200 F.3d at 1080.

3

Though the ultimate outcome of the case is not controlling for purposes of the EAJA analysis, we nonetheless can take guidance from the Seventh Circuit's decision. *See Sierra Club,* 820 F.2d at 518 ("[A]n analysis of the degree to which agency actions were or were not warranted cannot sensibly be made in a vacuum; prior proceedings in connection with the case must be taken into account.")

On the question whether the government's position had a reasonable basis in fact, the Court of Appeals' decision could hardly be clearer: it concluded that "there was no evidence of legally significant contamination" and that the government's claim of an imminent and substantial endangerment was factually baseless: "[o]nly trace amounts of contaminants were found, and there was no indication that they exceeded the levels of these contaminants found in the surrounding properties none of which was deemed to pose any kind of environmental hazard or to require or justify remedial efforts." *Tarkowski,* 248 F.3d at 598. Though the government relied in significant part on the presence of drums which were supposedly rusting, in fact most of the drums were hollowed out, with both ends removed, and many of the others were empty. None of the government's witnesses testified that any of the drums were leaking or on the verge of leaking – even after the EPA had the opportunity to inspect the site at its leisure after obtaining a warrant. And though the EPA also claimed to have relied on prior site assessments conducted by itself and other agencies, as the Court of Appeals noted, these did not show any sort of hazard or threatened hazard to the environment but rather indicated, at worst, some slight contamination from household use or exempt products, which the court characterized as "legally [in]significant." *Tarkowski,* 248 F.3d at 598. When they obtained their warrant, Environmental Protection Agency officials sampled in areas that they believed likely to show contamination, but

4

they found nothing beyond trace concentrations which did not indicate any sort of release. In sum, the government's factual position – its claim of an imminent and substantial hazard – did not have a reasonable basis in the truth.

The government's legal position fares no better. The Court of Appeals charitably characterized it as "extreme": the claim that "provided it has probable cause to believe that there is even a thimbleful of a hazardous substance spilled in a person's yard ..., it has an absolute right to an access order regardless of the action it proposes to take once it gains that access." *Tarkowski,* 248 F.3d at 599. The Court of Appeals unequivocally termed the government's position unreasonable: "[i]t is unreasonable for the EPA to insist on a judicial carte blanche to embark on drastic remedial action in advance of obtaining any rational basis for believing that there is any danger to the environment that would warrant such action." *Id.* at 600. This Court agrees: the government had no reasonable basis under the law to believe that if a hazard was found, no matter how small, it had the right to do whatever it wanted on Tarkowski's property.

The government says that "[b]efore this case, no court had ever denied a request by EPA for access to conduct response actions under CERCLA based on a determination that EPA's proposed actions were unjustified." United States' Response on Substantial Justification, p. 11. It argues that this means that its legal position cannot be deemed to have been unjustified. The government's contention seems to be that unless some court has specifically ruled a particular course of action baseless, it is entitled to take the bit in its teeth and run roughshod over any citizen who happens to lie in its chosen path and should have no reason to expect that the courts will have anything to say about it. Claims of this type do not well suit a government of constitutionally limited powers, charged with respecting and protecting the fundamental rights of

its citizens. Moreover, the government's claim is at war with the plain language of §9604(e): as the Court of Appeals put it, "it is to protect citizens against arbitrary and overreaching actions by government bureaucrats that courts are empowered to prevent arbitrary and capricious interferences with property rights." *Tarkowski,* 248 F.3d at 600.

The government's position, had it been accepted, "would spell the abolition of the right of judicial review expressly granted by section 104(e)(5). It would give the agency in effect an unlimited power of warrantless search and seizure, something that the statute does not contemplate and that the Fourth Amendment would almost certainly forbid." *Id.* at 602. This position – in effect writing judicial review out of the statute – can in no way be characterized as reasonable. The fact that it had not been rejected in any case is an indication not of its reasonableness but rather that government officials in this country, thankfully, tend to be disinclined to take unsupportable positions that impair the rights of its citizens.[1] When they do so, however, they cannot justifiably expect that the courts are powerless to rein them in.

In sum, the Court concludes that the government's position was unjustified in any of the three relevant respects: its factual contentions lacked a reasonable basis in truth; its legal theory lacked a reasonable basis in law; and there was no reasonable connection between the facts it alleged and the theory it propounded.

Date: November 26, 2001

---
MATTHEW F. KENNELLY
United States District Judge

---

[1] The government finds no support in the fact that CERCLA's legislative history contains comments by a single senator tending to support its views. It is well established that statements of individual legislators are an unreliable indication of the meaning of a statute – particularly when they conflict with the statute's plain language. *See Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 589 (1985).